Our third case for this morning, we'll wait just a minute while the courtroom settles down. Our third case is Owens v. LVNV Funding, LLC. And in just 30 seconds we'll hear from you, Mr. Geiser. Thank you. Okay, you may proceed. Thank you, Your Honor. May it please the Court. Defendants are professional debt collectors. Their scheme involves intentionally flooding bankruptcy courts with time-barred claims. Defendants admit that these claims are baseless. They are subject to an ironclad affirmative defense, and they will be rejected 100% of the time if the system functions as Congress intended. Let me ask you a question about that. I'm sure that's true of a lot of these claims, but I was a little bit surprised that neither you nor your opponent said anything about Bankruptcy Rule 9011, which is the bankruptcy equivalent to Rule 11, which says when you file things in the bankruptcy court you're making representations that they're not for an improper purpose and they're not frivolous and so on. So why wouldn't your argument actually apply to the subset, even if it's a big subset, of claims that would be barred by 9011? And maybe there are a few claims that you don't know if it's a four-year or a six-year or a ten-year or whatever. So there could be some claims where there's really a bona fide argument to be made about timeliness. That's true, Your Honor. First, we do cite Rule 9011 in our brief, and we think that that actually applies to these claims. These are claims that are sanctionable under Rule 9011, in the same way that they're sanctionable in a federal district court. We cited these principles both in our opening brief and our reply brief, and the system functions only when parties honor those. You actually just cited Rule 11, unless you just didn't put it in your table of authority. If somebody missed it, then I apologize for that, Your Honor. But we do cite the same cases that involve Rule 9011, including this Court's decision in In re Accelo, which stands for the proposition that in bankruptcy, just like ordinary litigation, because Rule 9011 is a counterpart to Rule 11. Pretty much word for word, yes. Exactly. Parties need a good faith basis for their filings, and that includes not filing when they know that the claim is subject to an ironclad affirmative defense. And in this case, my friend actually concedes that these claims are so patently frivolous on their face that even a debtor, presumably, could look at the claim and realize that it's time-borrowed. So the defendants truly have no basis for filing these claims in this case. Now, I do think that while Rule 9011 works as a sanction, I don't think that means that these claims aren't also actionable under the FDCPA. And under the Court's decision in Randolph, it's very clear that these two schemes can work together. In fact, they're both prohibiting the exact same conduct. The Code doesn't permit the filing of a knowingly frivolous claim. So what I'm just getting at is not really an unfriendly question, but I don't know why the FDCPA would apply to a claim filed in which there was a bona fide argument about the timeliness that would be looked at by bankruptcy court, would be looked at by the trustee, and yay or nay would be the answer. It seems to me the Fair Debt Collection Practices Act could only apply to things that were within the scope of 9011. Well, Your Honor, I think yes and no, and this is why. The Fair Debt Collection Practice Act is a strict liability statute. So if a defendant asserts a right to payment that doesn't exist, then they will be subjected to liability under the FDCPA. Now, the FDCPA also has an affirmative defense, and it only applies to professional debt collectors, and any professional debt collector that set up a procedure just like Congress wanted, that's reasonably adapted to avoid the filing of time-barred claims, they'll be protected by that affirmative defense. So I think in this case, too, we're not dealing with a good-faith claim. These claims on their face are plainly frivolous. There is no good-faith basis for thinking they might even conceivably be enforceable. And for that reason, it's quite clear, according to the defendant's very business model, what they do is, as this court recognized in McMahon, citing the FTC study, they purchase large portfolios of debt for pennies on the dollar, and they flood bankruptcy courts precisely because they know that the safeguards in place don't work. They know that the safeguards will break down in a sufficiently high percentage of cases where this practice is very profitable. It's why they're defending it so strenuously in this court. So do you have off the top of your head any statistics about the number of Chapter 13 cases that are handled on a pro se basis? Your Honor, I don't have exact statistics. The best that we have is actually the statistic from my friend's brief, which is at 10% of cases, which is a pretty sizable number. And what we do know is that even when debtors are represented, the representation is often limited to filing the core Chapter 13 paperwork. It doesn't extend to reviewing proofs of claim. And we also know that trustees who are tasked with objecting to these claims, which we think is actually a point in our favor, not my friend's favor, because it shows that Congress clearly did not want these claims in the process. They found these claims so objectionable, they tasked a trustee with a mandatory duty to review and object to the claims. The problem is that trustees simply can't do it. So is your position, I mean it seems to me, your position must be that the filing of these clearly time-barred claims maybe sometimes is a burden on the unsophisticated debtor with these 10% or whatever the correct number may be. But it's in addition a burden on the bankruptcy system. And I wonder whether the burden on the bankruptcy system is the problem of the Fair Debt Collection Practices Act or whether that's something that's beside the point here. I think it is included in the scope of the Fair Debt Collection Practice Act. And just to be very clear, even without the burden on the bankruptcy system, this poses a distinct burden on debtors. Any debtor who has a 100% plan, which means they're paying out every cent of unsecured debt, any time these claims slip through the process, that's coming directly out of their future wages. And even debtors who don't have a 100% plan, they're also hurt in a very distinct way because when a case is converted to Chapter 7 or dismissed, as actually happened in all three of these consolidated cases, the outstanding balance on all legitimate claims is now higher because money has been diverted to these illegitimate claims. But I do think that the FDCPA is concerned also about the creditors, which is part of the harm to the bankruptcy process. It's designed in part to protect debtors, but also to make sure that innocent creditors aren't harmed. And this practice is designed precisely to take advantage of known shortcomings in the process and harm creditors. They're diverting money from legitimate creditors who otherwise receive less or they receive the same amount, but it takes them longer to get it because these frivolous claims are included in the process. And I also think that it's very clear that the only time they get paid is when the process breaks down and fails. There are only three scenarios that we can think of where a debt collector actually gets paid on these claims. The first is they file a claim and people are actually deceived. They look at it and they think they have a right to payment on enforceable debt when in fact they don't. That violates the FDCPA. It's a false and misleading statement. The second scenario is where these claims simply slip through the process without any studied or educated review. And given the incredible flood and pressure on Chapter 13 bankruptcies, that actually isn't very hard to believe. If you look at the Fagan's decision, which is cited in our brief, there was testimony from the bankruptcy trustee for the Middle District of Alabama who said that his office processed between 6,000 and 7,000 claims every month. So just doing the math, even if his office is working 365 days a year, eight hours a day, they have to process a claim every two minutes. So it's simply inconceivable that even with the staff and even with lawyers to help him, that a trustee will realistically account for this incredible flood of untimely claims that are being submitted to the court. So that, again, is a violation of the FDCPA. The third scenario where they sometimes collect is when a trustee or a debtor actually realizes this is a frivolous claim, but they also realize that the nuisance value is so high, the time it takes to object simply isn't worth it. So they let the claim go through, even though this is a claim that Congress did not want paid through the bankruptcy system. Now did you, I'm trying to remember whose brief this was, mention in your brief that this was going, that that last group especially, was going to depend a little bit on whether counsel, if it's a counsel debtor, counsel is proceeding on a flat fee basis or something more like an hourly basis? I think that that could affect the decision, Your Honor, because if a counsel is obviously charging by the hour, then either the debtor has to look and say, is it worth it to me to reduce you? Well, sure, then the nuisance value of objecting is pretty plain if it's a rather small debt as some of these were. It doesn't take too long to run up $1,000 in legal bills. That's right, Your Honor. But even for a flat fee, presumably if this practice is tolerated, and the point of the FDCPA, by the way, is to hold a cudgel over the heads of debt collectors so they stop engaging in this practice. This business model exists because it works. If the FDCPA functions as Congress intended, this business model will immediately stop. And so for debtors, though, currently, when the FDCPA isn't used or paying a flat fee to their attorney, the flat fee will presumably be higher because the attorney has to take into account for the fact that there will be these frivolous claims that are filed in the process that they need to review and they need to file an objection. So in the very best case scenario, it simply burdened the trustee and it's burdened the debtor with the hassle and expense of filing these needless objections. It forces the court to waste its time adjudicating this objection where everyone knows what the right answer is, just in case the claim might actually slip through the process and accidentally be awarded even though Congress did not want these claims to be paid in the bankruptcy system. No debtor files for Chapter 13 relief because they're concerned about unenforceable debt. The moral obligation argument, you mean? Exactly. As the court noted in McMahon, and the court was exactly correct in McMahon in saying that, and that McMahon, that principle in McMahon has been now cited by both this court for the Seventh Circuit, Framuth in the Eighth Circuit, Huertas in the Third Circuit, and Crawford in the Eleventh Circuit. So the contention that these are actually somehow enforceable debts, debts that are cognizable in the bankruptcy system, is simply not correct. It flouts the plain language of the code and the Supreme Court's definitive construction of that plain language. I think that I'll just add one more point unless the court has questions before reserving time for rebuttal. I do think that when my friend suggests that there's enough information for everyone in the process to realize that these debts are time-barred, that's simply flipping the system on its head. If there's enough information for the recipients of the claim to realize it's time-barred, surely there's enough information for the debt collectors who are professionals to realize these claims are time-barred and not burden the system with these untimely debts. Unless the court has further questions, then I'll reserve my time. Thank you. That would be fine. Thank you. Mr. Bertacci. Good morning, Your Honors. May it please the court, my name is Joel Bertacci. I am arguing on behalf of all the Diapolese today. Mr. Geiser refers to me as his friend, and I appreciate that, but we're not going to stay friends if he keeps misrepresenting my positions. We have not conceded that these claims are frivolous. We have, in fact, argued rather strenuously in our brief that under the broad language of Section 101.5 of the Bankruptcy Code, they are simply not frivolous, they are permitted, they are invited. Well, frivolous and permitted are two different things. I'm very concerned about this, and let me start by asking you whether we would have to create a conflict with the Eleventh Circuit's Crawford decision were we to rule in your favor. Yes, Your Honor, I think you would, but you would be joining the views of the Ninth, the Second, and at least the Eighth Circuit Bankruptcy Appellate Panel. Right, but the Bankruptcy Appellate Panels are subject to review by the courts. No, I understand. So there's only one court of appeals, and that's the Eleventh Circuit, and the Eleventh Circuit in its Crawford decision relied heavily on our decision in Phillips against asset acceptance, which was the state court context. I am at a loss to think how filing a claim that would not survive Bankruptcy Rule 9011 is anything but a frivolous claim that is hoping that, you know, 2% will slip through the system and your clients will collect. And I'm relying in part on the Johnson against Home Bank definition of a right to payment, which is an enforceable obligation, not a moral obligation, not something. In other words, I'm challenging the question whether it makes a difference whether it's the remedy that's been extinguished or whether it's the underlying obligation. I'm not sure that matters given Home Bank. Your Honor, I think that the plaintiffs are misinterpreting what the Supreme Court meant by enforceable in Johnson and in Next Wave and in Davenport where it all started. What the Supreme Court was talking about when it used those words is a characteristic of the debt at some time. But in none of those cases. Tell me why a debt that anybody who had a marginally competent lawyer would have an ironclad defense to isn't. I mean, it's no longer in the realm of things for which the law provides a remedy. There are all sorts of things that are legal wrongs for which there's no remedy. Sometimes you don't have standing for it. Sometimes maybe the statute of limitations has run. Maybe sometimes there's no private right of action and you have to wait and hope that the Attorney General will do something. I just don't see the distinction that you're talking about. Your Honor, the source of the distinction is state law. And as the Traveler's case says, what is and isn't a claim is governed to some degree by the rights created by state law. No, I understand state law draws a distinction between those two. But I don't know why in the federal bankruptcy context, which is a matter of federal law, why a debt on which the right to obtain a remedy has gone away because of the passage of time is something that you can nonetheless file a claim on in bankruptcy hoping that nobody will notice this. Your Honor, I don't think that's what they're hoping. And first thing I would say is that the debt... Sure they're hoping that. They would like it to be presumptively payable. They would like it to be paid, but there are, as Judge Weedoff pointed out in Legrone, there are reasons, and Judge Glenn, there are reasons that these claims don't get objected to. It's a low return proposition, which is why our clients don't pay a lot of money for the debts. Because people catch you on it, that's why. Because people will file objections. But sometimes they don't. And there are reasons contrary... Go ahead and finish your answer. No, no, I was just going to say contrary to what my client said, there are reasons. And the point that we're making is it may not be worth it to object. And so there may be a return. There probably won't be in a lot of cases. But it is, as Judge Weedoff pointed out, it is up to the people who are in the bankruptcy to make that decision. And FDCA liability is inconsistent with that. It takes the decision away. Yes, Your Honor. Have you completed the answer? That one, yes. Go ahead. No. What I was going to come back to is that state law, which Traveler says governs the nature of rights in bankruptcy, says, but these cases say, and the plaintiffs bar doesn't like it, but these cases say the debts are not extinguished. That's the law in Indiana. That's the law in Illinois. I guess it's not the law in Wisconsin, as I understand it. But the two states that are involved here, state law says it's not extinguished. So when Your Honor says the debt goes away, it doesn't go away. Well, but let's be careful about what we mean by not extinguished. That's why we need to come back to Johnson against Homestead Bank. If it's in existence in some metaphysical sense, but you cannot bring a lawsuit on it because of the passage of time, then it's not an enforceable obligation, even though it may still be an obligation. Yes, Your Honor. That's a different way of putting it. It may not be anymore. But when Johnson and when Davenport and when Next Wave talked about it, they're talking about a characteristic of the debt that exists, that I think at the time it was formed. That characteristic of the debt, the remedy, that judicial remedy may have dropped out. But that's distinguishing it from an obligation that was never an enforceable debt in the first place. And let me give you a- Where does it say that in any case? Well, that's what the point of those cases were. They weren't talking about timeliness or bankruptcy. What they were talking about in Davenport, the argument that the, I don't know if he was petitioner or respondent, but I suppose it was Davenport, was arguing is my restitution obligation doesn't fit within 101.5 because I don't owe it to the person I supposedly injured. The court imposed it on me, and it's not the result of something in a relationship that was created between myself and the person who is the victim of the crime. And the court said that doesn't matter. It was created, it's enforceable at the time by somebody. That was the distinction they were making, is enforceable by who, not enforceable now. And that's why those cases and the use of the word enforceable don't apply to this situation. A debt doesn't have to be enforceable to be the basis for a claim, and I suppose the best proof of that is the debts that aren't enforceable yet are included. If I borrow $1,000 from you today, and the deal is I will pay you back at the end of the year, and tomorrow I declare bankruptcy, you don't have to wait until the end of the year to file a claim, even though I don't owe you anything yet. Right, because the claim isn't barred by anything. It may not have ripened. But it isn't enforceable either. It's not barred as a matter of law, which is what the statute of limitations claims are. You agree, if there's any point of agreement, we all agree that if you put the claim in there and somebody, the debtor, the trustee, if the person is represented, the lawyer, says this claim is too late. You know, there's a 10-year statute of limitations, and 20 years has passed, something obvious. Okay. You agree that you're going to get that claim disallowed. It's not going to. If it's objected to, yes. That's right. And maybe it won't be. So we all agree that this claim cannot be enforced if anybody's on the ball. I totally agree with you that there are some. I'm sorry, I don't agree with that. Well. I hate to interrupt, but I don't agree with it being enforced. It's not going to be enforced if anybody's on the ball, because there are reasons that you don't object, and Mr. Geiser referred to some of them. It may be that most of the time or almost all of the time they will, but there may be decisions made, and I don't think it matters whether you're talking about a flat fee lawyer or an hourly lawyer. It may not be worth even a flat fee lawyer's time to object in certain cases. So, in other words, this is the nuisance value argument that you make, which I don't find too attractive, but I agree. I mean, sometimes people don't object when lawsuits are filed because it's cheaper to settle it than it is to contest it, but that's a pure nuisance value that I would like to get away from. What I was going to say is I do agree with you that there could be some cases where you file the proof of claim and it's legitimately not clear, you know, which statute of limitations files, applies, sorry, which applies, what was the accrual date. You know, we see cases about statute of limitations. I don't have any problem with those cases. You know, file away. You know, put your claims in. I don't think there's some across-the-board rule that you've got to have 100% foresight, but there is another set of cases where there is absolutely no question that there is a perfect statute of limitations defense, and those are the ones that concern me. I understand that, Your Honor. And to get back to the point I was making, there is a difference between an obligation that was enforceable once where there was a legal right to pay, and the legal right survives even if the remedy doesn't, and a pure moral obligation which, to continue the hypothetical, is you give me $1,000. I may feel a moral obligation to pay you back, but it's clearly a gift. But that's all there ever was, and that's what those Supreme Court cases are talking about when they talk about enforceability is was it a characteristic of the debt. That's the distinction. I don't think it's relevant that it is not only not enforceable now, but it will never be enforceable again in the history of time. Well, I hesitate to say never because sometimes they get revived, but they wouldn't get revived by a bankruptcy distribution, I don't think. But, no, I'm not troubled by that because those decisions, as was pointed out in a number of cases, including Legrone, are best made by the people who are in the bankruptcy, the lawyer, the trustee, I suppose in some cases the judge, will decide whether it's worthwhile. What's missing from these questions and what's missing from the plaintiff's argument is the statute. And that's where Davenport is important in this case, and even Next Wave and Johnson, because they say you start with the statute. The statute is as broad as it could be. It doesn't exclude anything. It includes. So your view is that 9011 just doesn't apply to the claims filing process. Let's get beyond the statute of limitations. No, Your Honor. There is no limit on the claims that you can file. No, Your Honor. I think a claim has to qualify under 1055. But 9011 has nothing to say about it. You can't be sanctioned under the equivalent of Rule 11. Well, let's imagine for a moment we were in Wisconsin and the statute of limitations is run. And my understanding of Wisconsin law on this is imperfect, but my understanding is that it does extinguish the debt. Filing that claim might qualify under 9011, but filing a claim that fits within the statutory definition of claims I don't think is sanctioned. And so, therefore, it doesn't violate 9011 and it wouldn't violate the FDCPA. In fact, holding that it would would distinctly disserve the Bankruptcy Code's goals because the goal of the Bankruptcy Code, as evidenced by that broad language in 1015, is it's a big tent, and it wants everybody in. Good, bad, matured, unmatured, enforceable, unenforceable. It wants everybody in, and it will, as one of my bankruptcy partners says, then let God, being the bankruptcy judge, sort them out. Correct. No, frivolous, non-frivolous. And that is the idea. And that furthers a lot of objectives, including objections that people have when they file for bankruptcy because they want discharges. Maybe they'll get it, maybe they don't, but everybody who files Chapter 13 wants a discharge. And they're not going to get it unless the debt is included. In fact, Mr. Owens, one of the plaintiffs in this, he's actually scheduled it himself. Right, well, because people don't know. If they scheduled themselves, fine. Hard to think that people are worrying too much about debts that are stale. Well, I don't know whether they are. They may be getting letters, and they're going to stop getting letters once bankruptcy is filed, and they're never going to get one again once it's discharged. Bankruptcy puts out an invitation calling all debts, and it doesn't distinguish between old ones and new ones. It distinguishes between debts that exist, which under state law in Indiana and Illinois these did, and perhaps debts that don't exist, like extinguished ones or ones that were never enforceable in the first place. That's what bankruptcy wants. That's why all these bankruptcy judges say, we're fine with dealing with this. The court asked questions, Mr. Geiser, about the burden on the system. If this was a big burden on the system, you would have heard about it from a lot more bankruptcy judges than you have. But they don't seem troubled by the fact that these things have to be dealt with, and they don't seem troubled by the fact that some of them may be allowed if that's the decision that a bankruptcy lawyer or a bankruptcy trustee makes, is to let it go through. Do you think Phillips was wrongly decided? Well, now you're putting me on the spot. No, I don't think, as the lawyer in this case, no, I don't. I think Phillips is entirely distinguishable. And Phillips is distinguishable because the concerns that were described in Phillips about a state court collection suit where the debtor gets the complaint and says, oh, my gosh, I have to deal with this, are different. And we outline all those protections. Then the concerns about a document filed with the court that's going to be reviewed by one, maybe two, maybe three lawyers. It's just a different situation. I think Phillips actually illustrates a point that's valuable for us, and that's why I spent a lot of time on it in my brief. I'm not asking you to do anything about it. I have my own views about it. But for this case, you certainly don't need to contest it. Finally, I would note, going back to enforceability, that the Eleventh Circuit, which, of course, is the plaintiff's favorite circuit, agrees with us on that issue. They don't see any problem with filing these claims in terms of their fitting within the definition of 101.5, regardless of the fact that they're not judicially enforceable. They said that last week or the week before in the Johnson case. And, in fact, interestingly enough, and all state law talks about this a little differently, the Johnson court cited an Alabama case that referred to a debt on which the statute had run as still being a cause of action. Now, Illinois and Indiana courts haven't used that language. But I think it's wrong to say that the debts go away when the statute of limitations run. They don't. So what the Eleventh Circuit says is, similar to the filing of a stale lawsuit, a debt collector's filing of a time-barred proof of claim creates the misleading impression to the debtor that the debt collector can legally enforce the debt. So that's really the essence, I think. Right. But there's nothing, Your Honor,  In McMahon, the court said, picked a word in the letter and said, this implies enforceability. But the plaintiffs have never pointed to anything. Mr. Bertocchi? Yes, Your Honor. Didn't the Second Circuit make a pretty good review of the district courts that have dealt with this and conclude that if there are any abuses, the system's bankers' system has built-in protections? Yes, Your Honor. The Second Circuit did that, and they're plainly on our side in this case. In addition, a number of other courts have looked at those reviews, including some very well-respected bankruptcy judges in the circuit. And I think that's clearly correct. I guess my time has expired. No, you can go. No, I was going to say, the Second Circuit's view, having looked at all those cases, is that a bankruptcy debtor doesn't need the FDCPA. And that ultimately comes down to how you reconcile these statutes. Because the plaintiff's position is not good for bankruptcy, and it doesn't really do a lot more for FDCPA except generate more cases. Thank you, Your Honor. We would ask that the district courts be affirmed. Thank you. Anything further? What do you think of the Second Circuit's analysis on the potential for abuse? Your Honor, I prefer this court's analysis in Randolph, which is fundamentally incompatible with the Second Circuit's analysis. I'd also point out that the Second Circuit's analysis in Simmons, which is a very short analysis, has been effectively refuted by the Second Circuit itself in Garfield, where it looked at Simmons, it looked at Walls, and it said that this court's opinion in Randolph was actually more convincing. And it acknowledged that this court's reasoning in Randolph would take it to a different place than Simmons. Of course, the panel was bound by Simmons. In that case, they didn't need to overturn it. But I think that that reflects the quality of this court's reasoning in Randolph. I'd also like to point out, my friend suggests that there are, in fact, reasons, legitimate reasons, that these claims will be allowed and that people won't object. Yet, the defendants, who have a lot of experience flooding courts with these time-barred claims, still can't cite a single concrete example of one that's actually true. We haven't heard a single reason that anyone would actually look at this claim and say, this is an appropriate claim to be paid. This does not advance the purposes of the bankruptcy system. Debtors do not seek relief from unenforceable debt. And that's exactly what this is. It's unenforceable. They don't need the protections of the discharge injunction because the time bar does that for them. And if they're concerned about being contacted by debt collectors, the FDCPA has a provision in it. It's 1692C, subsection C, that says that once a debtor says, I will not pay this debt, the debt collector has to cease communicating with the debtor. So they have all the protections that they need without the need to burden the bankruptcy system with these time-barred, unenforceable, frivolous claims. Do we have some examples that the system, as it now exists with the filing of these unenforceable claims, that they are the debt collectors that routinely go after them? Is there any studies or anything to indicate that there is this assault on debtors by time-barred claims? There is, Your Honor. I think in the Seventh Circuit and Crawford noted that the deluge of claims that are flooding the bankruptcy cases, the avalos. No, I don't mean whether they're filed. I'm just asking, as a result of the filing, what effect has it had on the debtor? Well, I think, Your Honor, again, it has a distinct effect on the debtor. In a 100% plan, they're paying out a claim that they don't have to pay. Bankruptcy is designed to eliminate that. That's if we use the unsophisticated debtor standard. Well, no, Your Honor. Which has not been accepted everywhere. Even in a counseled situation? Even in a counseled situation, Your Honor, the fact remains that there is no legitimate reason that these frivolous claims are ever being paid out. We can't think of one, and my friend, who's a very able lawyer... They're unenforceable. Are they frivolous? They are frivolous, Your Honor, under the bedrock rule that you can't file a claim subject to an ironclad affirmative defense. Just as Chief Judge Wood pointed out, under Rule 9011, these claims are, in fact, sanctionable. I see my time has expired. If Judge Flom has questions, you can answer them. Well, and has there been a practice of sanctions being imposed in this area? Some bankruptcy courts have started sanctioning debt collectors for filing these claims. I mean, bankruptcy judges are certainly aware of their power in this area, aren't they? Well, they are, Your Honor, but again, too, the fact that there is a remedy under the code doesn't mean there isn't a remedy under the FDCPA. Randolph made that abundantly clear. Well, the code speaks to a remedy, right? It does, but... Isn't that what Congress intended, that that remedy be employed? No, Your Honor. Is it an indication that we should import from another statute? Your Honor, the FDCPA is designed as an overlay to existing procedures. It's designed to attack the conduct of professional debt collectors. The code's remedies are calibrated for ordinary creditors, people who aren't professional debt collectors. Congress realized that professional debt collectors engage in conduct just like this. They come up with a business model that abuses the system, it takes advantage of system error, and it requires a heightened set of remedies to prevent it. And so this is a problem in the bankruptcy courts. It affects debtors every time a claim is allowed. It affects innocent creditors every time a claim is allowed, and it burdens the bankruptcy process when they have to deal with these frivolous claims. This will not lead to a flood of FDCPA lawsuits. It will lead to a temporary flood that will prevent the even greater flood of frivolous claims being submitted on time-barred debt. And there's absolutely no reason that Congress wanted these claims in the process, and we know that because Congress specifically singled out the statute of limitations in Section 558 as a ground for disallowing a claim that even if the debtor waives it, the estate can still assert it. That's how adamant Congress was that time-barred debts are not included in the process. And I think the Supreme Court has made clear when they say an enforceable obligation that these aren't enforceable obligations. These are only moral obligations, as this Court said in McMahon. And I think that is adequate for showing these claims fall outside the code. Unless there are further questions. Thank you. All right, thanks to both counsel. We'll take the case under advisement.